**FILED**
**JANUARY 18, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| LONG TERM DISABILITY PLAN FOR | ) | |
| EMPLOYEES OF MOLEX INC., | ) | **08 C 439** |
| CIGNA GROUP INSURANCE and | ) | |
| LIFE INSURANCE COMPANY OF | ) | **JUDGE CASTILLO** |
| AMERICA, | ) | **MAGISTRATE JUDGE BROWN** |
| Defendants. | ) | |

## COMPLAINT

Now comes the Plaintiff, THERESA THOMPSON, by her attorneys, DAVID A. BRYANT and DALEY, DeBOFSKY & BRYANT, and complaining against the Defendants, she states:

*Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of an employer-sponsored benefit plan which became insured under a group long term disability insurance policy ("Plan") underwritten by Life Insurance Company of America ("LINA") and insured by CIGNA Group Insurance ("CIGNA") under Group Policy No. LK0005801 for the benefit of employees of Molex Inc. ("Molex"). In addition, this action may be brought before this court pursuant to 28 U.S.C.

§1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.	The ERISA statute provides at 29 U.S.C. §1133 a mechanism for internal appeal of benefit denials. Plaintiff has exhausted all of her pre-suit appeals, thus this matter is ripe for judicial review.

3.	Venue is proper in the Northern District of Illinois. 29 U.S.C. §1132(e)(2), 28 U.S.C. §1391.

## *Nature of the Action*

4.	This is a claim seeking payment of disability income benefit payments pursuant to a policy of group insurance insured by CIGNA and underwritten by LINA to provide Long Term Disability Insurance Benefits (a true and correct copy of which is attached hereto and by that reference incorporated herein as Exhibit "A") to employees of Molex under Policy No. LK0005801. This action, seeking recovery of benefits, is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

5.	Policy No. LK0005801 does not defer to the discretion of CIGNA or LINA in the review of the claim, and therefore this action is subject to a *de novo* standard of review by this court.

## *The Parties*

6.	Theresa Thompson ("Thompson") (DOB 6/20/1952) is and was a resident of Chicago, Illinois at all times relevant hereto.

7.	As a benefit of her employment, Molex provided its employees, including Thompson, with long-term disability insurance benefits. At all times relevant hereto, Molex, has been authorized to and does business in the Northern District of Illinois.

8. CIGNA is an insurance company providing long-term disability coverage to the employees of Molex under Policy Number LK0005801.

9. LINA is an insurance company that underwrites Policy Number LK0005801.

10. The policy LK0005801 was rewritten January 1, 2000 and was a continuation of the same numbered policy that became effective as of July 1, 1978. The policy anniversary date is January 1.

11. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to her employment, Thompson received coverage under the Plan as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Plan.

### *Statement of Facts*

12. Thompson was actively employed full-time by Molex as a Credit Analyst until February 5, 1997, when she had to cease working due to severe neck and back pain resulting from multi-level disc disease and ensuing surgeries. Thompson has not engaged in disqualifying substantial gainful activity since February 5, 1997.

13. Subsequent to ceasing employment, Thompson made a claim for long term disability benefits under the Plan, stating that due to her condition, on or about February 5, 1997, and continuing to the present without interruption, she met the Plan definition of "disability," which states in relevant parts:

> "The employee is considered disabled if, solely because of Injury or Sickness, he or she is either:
> 1. unable to perform all the material duties of his or her Regular occupation or a Qualified Alternative; or
> 2. unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

3

1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience; or
2. unable to earn 80% or more of his or her Indexed Covered Earnings."

(Exhibit "A" at 12).

14. Thompson supported her claim for benefits with numerous medical records and reports, demonstrating that she disability arising from impairments of her neck and back. Thompson submitted other evidence including her treating physician opinion certifying disability, and her long term disability was approved on June 9, 1997. She received long term disability benefits after satisfying the Plan's 90-day elimination period (February 5, 1997, until May 6, 1997).

15. Following approval of long term disability benefits, Thompson's medical condition did not improve, and she required four (4) additional spinal surgeries, on September 15, 1997 (lumbar hemilamincetomy), October 1998 (anterior cervical diskectomy and fusion at C4-5 and C5 corpectomy), and February 13, 2002 (L4-5 laminectomy and diskectomy with Brantigan cages, local bone, and AGF, L4-5 pedicle screw fixation, and L3-S1 posterior fusion). Another spinal surgery was performed post-termination in January 2007.

16. Despite the surgeries, post surgical MRI evaluations continued to show abnormalities and Thompson continued to experience neck pain, mid back pain, and low back pain.

17. On May 6, 2000, CIGNA acknowledged the severity of her condition when it certified that Thompson was disabled from both her own job and any other job.

18. Thompson's claim was further supported by a determination of disability (signifying the inability to engaging in "any substantial gainful activity" (42 U.S.C. §423(d)(1)(A) – definition of "disabled" under the Social Security Act)) from the Social Security

4

Administration which found she was disabled as of September 2, 1998 because she is "unable to engage in work activity due to pain…unable to perform the requirements of her past relevant work…[and] is limited to less than sedentary work" (a true and correct copy of which is attached hereto and incorporated herein as Exhibit "B", Findings p. 6).

19. CIGNA referred Thompson to an attorney to assist with her Social Security Disability claim, paid costs associated with that representation, and was notified of the favorable disability determination.

20. In a letter dated June 9, 2005, CIGNA terminated Thompson's benefits effective June 6, 2005, even though there had been no improvement in Thompson's condition, for which she required and underwent a total of 10 serious spinal surgeries (at the time her claim was terminated) at levels in her cervical, thoracic, and lumbar spinal surgeries with documented residual severe pain; additional spinal surgeries had been performed subsequent to her initial qualification for long term disability; and additional spinal surgeries were anticipated and in fact performed subsequent to termination.

21. The Plan states in relevant part,

"**TERMINATION OF DISABILITY BENEFITS**

Benefits will end on the earliest of the following dates:
1. the date you earn 80% or more of your Indexed Covered Earnings;
2. the date we determine you are not Disabled;
3. the end of the Maximum Benefit Period;
4. the date you die;
5. the date you refuse, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan;
6. the date you refuse, without Good Cause, to fully cooperate in a Transitional Work Arrangement;
7. the date you are no longer receiving Appropriate Care;
8. the date you fail to cooperate with us in the administration of the claim. Such cooperation includes, but it not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due."

(Exhibit A, p. 8, emphasis in original).

22. After CIGNA refused to pay continuing benefits, Thompson submitted a timely claims appeal to CIGNA which included medical evidence supporting her ongoing disability.

23. However, despite the foregoing events as outlined in paragraphs 12-22, CIGNA refused to alter its decision to deny payment of benefit in decisions dated January 5, 2006 and the final determination denying continuation of benefits on September 21, 2006.

24. Because all internal claims appeals through CIGNA have been exhausted, this matter is now ripe for judicial review.

25. The determination by CIGNA is contrary to the terms of the welfare benefit plan and has no rational support in the evidence. That decision is also contrary to conclusions reached by an independent, objective U.S. governmental agency as well as the reports of the treating and examining physicians.

26. As a direct and proximate result thereof, based on the evidence submitted to CIGNA establishing that Thompson has met the Plan's disability definition, and that she continues to meet the definition of Total Disability, Thompson is entitled to all benefits due since June 6, 2005, and such benefits must be continued until she recovers from disability, dies or reaches the age of 65, whichever comes first.

WHEREFORE, Plaintiff prays for the following relief:

A. That the court enter judgment in Plaintiff's favor and against the Defendants, and that the court order Defendants to pay disability income benefits to Thompson in an amount equal to the contractual amount of benefits to which she is entitled;

B.	That the court order Defendants to pay Plaintiff prejudgment interest at a rate of 9% per annum on all benefits that have accrued prior to the date of judgment in accordance with 215 ILCS 5/357.9 or 5/357.9a;

C.	That the court order Defendants to continue paying Plaintiff benefits so long as she meets the policy terms and conditions for receipt of benefits;

D.	That the court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

E.	That Plaintiff recovers any and all other relief which she may be entitled, as well as the costs of suit.

s/ David A. Bryant
One of the attorneys for Plaintiff
dabryant@ddbchicago.com

David A. Bryant
Daley, DeBofsky & Bryant
55 W. Monroe St., Suite 2440
Chicago, Illinois 60603
(312) 372-5200
FAX (312) 372-2778