## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

### DECISION

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |
| | Period of Disability and Disability Insurance Benefits |
| Theresa T. Thompson | |
| (Claimant) | **08 C 439** |
| | **JUDGE CASTILLO** |
| | **MAGISTRATE JUDGE BROWN** |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### INTRODUCTION

On August 23, 2000, the claimant filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed on June 11, 2001. Because there is sufficient evidence to establish disability based upon the evidence in the record, an oral hearing was not held. The claimant alleges disability beginning September 2, 1998 due to back disorders. Robert H. Todd represents the claimant in this matter.

### ISSUES

The general issues are whether the claimant is entitled to a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, respectively. The specific issues are whether the claimant was under a "disability" and, if so, when such disability commenced and the duration thereof; and whether the special earnings requirements of the Act are met for the purpose of entitlement.

### APPLICABLE REGULATIONS

Social Security Regulations No. 4 provides steps for evaluating disability and requires that a claimant's impairment must meet the 12 month duration requirement before being found disabling. You will be found disabled if you are not working or engaging in substantial gainful activity, if you have a severe impairment, and if your impairment meets or equals a listed impairment in Appendix 1 of Subpart P, Regulations No. 4. You will also be found disabled if you are unable to perform the type of work you performed in the past and if your impairment is

so severe as to preclude the performance of other work, which exists in the national economy (20 CFR 404.1520(b) to 404.1520(f)).

## SUMMARY AND EVALUATION OF THE EVIDENCE

With respect to the claim for Disability Insurance Benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that she has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

The claimant is a 49-year-old individual with at least a 12th grade education and past relevant work as accountant.

Pursuant to the first step of the sequential evaluation referred to above, the undersigned must determine whether the claimant has engaged in substantial gainful activity since her alleged onset date of September 2, 1998. In this case, the record shows that the claimant has not engaged in work activity since her alleged onset date. Hence, in the absence of evidence to the contrary, the undersigned determines that the claimant has not engaged in disqualifying substantial gainful activity during the period relevant to this decision.

The second step of the evaluation involves determining whether the claimant has a "severe" impairment. 20 CFR 404.1521 and Social Security Ruling 96-3p define a "severe" impairment as one that significantly limits a person's physical or mental ability to perform basic work activities. Additionally, Social Security Ruling 85-28 directs that, when evaluating severity, the Administrative Law Judge considers the impact of the combination of impairments on a claimant's ability to function. Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that she has a medically determinable physical or mental impairment and that the impairment could reasonably be expected to produce the alleged symptom (Social Security Rulings 96-3p and 96-4p).

In this case, the claimant has the following impairment which is considered to be "severe" under the Social Security Act and Regulations: disorders of the back (discogenic and degenerative). This impairment prevents the claimant from engaging in sustained work activity due to pain. Accordingly, the claimant has an impairment, which significantly limits her ability to perform basic work activities and which, therefore, is severe within the Social Security Act.

The third step of the evaluation involves determining whether the claimant's impairment meets or equals the requirements of a listed impairment in Appendix 1, Subpart P, Regulations No. 4. The undersigned finds that although the claimant has a severe impairment, she does not have an impairment or combination of impairments which meets or equals the requirement of a listed impairment.

Prior to analyzing the fourth step of the sequential evaluation, the undersigned must first establish the claimant's residual functional capacity. As set forth in 20 CFR 404.1545 and Social

Security Ruling 96-8p, residual functional capacity defines the type of work activity that an individual is able to perform on a regular and continuing basis despite her impairment. In this case, the claimant is unable to engage in sustained work activity due to pain.

The objective medical evidence of the claimant's case supports the above-described degree of functional limitation.

Columbus Hospital records reveal that the claimant received inpatient care from October 7, 1998 to October 11, 1998, due to C4-5 herniated nucleus pulposus with myelopathy; and probable drug reaction to Kefzol. She underwent C4-C4 ACDF with bone bank graft and plate. Upon discharge, the claimant was placed on Vicodin, Senokot, Medrol Dosepak, and Atarax (Exhibit 2F).

Following her surgery, she underwent various tests. X-rays of the cervical spine (CS), on May 25, 2000, showed anterior spinal fusion extending from C3 to C7, when compared to a study from June 4, 1999. MRI of the same showed fusion of C5-C6 with anterior screws and plate with good alignment; bulging disc at the C2-C3 level with no significant change from the 1999 MR scan; and a left bulging disc at C7-T1 (Exhibit 3F, pp. 2-3).

CT of the CS, on July 8, 2000, showed multiple levels of fusion including bone graft replacing most of the C5 and metallic plate overlying C4, C5, and C6 with good alignment; and left herniated disc at C7-T1 (Exhibit 3F, p. 6).

Treatment note from Dr. N. Stadlan, the claimant's treating neurosurgeon, reported that she was seen on July 17, 2000, with continued complaints of left arm pain. She noted that the injections did not help and felt that it might have made things worse. Upon review of her myelogram, Dr. Stadlan noted a herniated disc on the left at C7-T1. The doctor recommended surgery if physical therapy (PT) and traction did not help (Exhibit 3F, p. 6).

Additional reports from Columbus Hospital show that she was admitted from September 13, 2000 to September 18, 2000, due to cervical herniated nucleus pulposus; and status post anterior cervical discectomy/fusion. Upon admission, the claimant reported a history of neck pain. She was involved in a motor vehicle accident (MVA) in March of 2000, which caused a fractured vertebra. She has reported upper extremity paraesthesias in addition to pain. The claimant presented for admission to undergo anterior cervical discectomy/fusion procedure (Exhibit 5F).

On November 5, 2000, the claimant underwent a consultative internist examination by Dr. N. Ahluwalia. The claimant reported that she had surgery on September 15, 2000 for a herniated disc. She said she developed a left lid lag because of nerve being compressed during surgery. Dr. Ahluwalia reviewed her record in her folder, which included myelogram dated July 17, 2000, MRI of the CS and CT of CS (Exhibit 3F). Dr. Ahluwalia noted that she was in moderate distress because of wearing a long cervical collar and a thoracic corset. She could not sit on a chair for a long time because of the pain. She had difficulty getting on and off the examination table because of her pain and the corset. Her actions were slow because of the pain. On exam, there was left lid lag present. Since her neck was in a cervical collar, she was not allowed to move it at this time. The movements of the lumbar spine (LS) were severely restricted. The

movements of the thoracic spine (TS) could not be assessed because of the corset. The claimant could hardly move the neck or the TS. The claimant could not raise the shoulders overhead because of the pain in her neck. She was diagnosed with status post multiple surgeries and fusion, cervical, thoracic and lumbar spine with residual pain and restriction of movements of the whole spine; hypertension; and left lid lag since surgery (Exhibit 7F).

Ravenswood Hospital records reveal that she was admitted on February 13, 2002, due to L4-5 radiculopathy and mechanical pain. Study showed a recurrent herniated disc and degenerative disk disease. She was refractory to conservative treatment. She subsequently underwent L4-5 laminectomy and diskectomy; L4-5 pedicle screw fixation; and L3 through S1 posterior fusion (Exhibit 11F).

In reaching the conclusion that the claimant is unable to perform even sedentary work, the undersigned has considered the claimant's allegations of inability to work because of subjective symptoms. Social Security Regulations 404.1529 and Social Security Ruling 96-7p provide, in pertinent part, that when a claimant alleges symptomatology such as pain, the undersigned must consider the observations of treating and examining physicians as well as the opinions expressed in medical source statements. The specific factors which the undersigned must weigh include: the nature, location, onset, duration, frequency, and intensity of the subjective symptom; any precipitating or aggravating factors; the type, dosage, effectiveness, and adverse side-effects of any medications used to treat the symptom; treatment, other than medication, for relief of pain; functional restrictions; and the range and extent of the claimant's daily activities.

The claimant's description of her limitations is generally consistent with the record when considered in its entirety. Accordingly, the claimant completed a disability report in which she indicated that she suffered from back problems. She said that her ability to stand, sit, bend and stoop was decreased by 50 percent. She reported that she underwent surgery on September 1, 2000 (Exhibit 1E). In her reconsideration disability report, she stated that she underwent another surgery because of herniated disc. She noted that she her left eye was damaged since the surgery. The claimant stated that her doctor told her not to work and to use extreme caution (Exhibit 5E). Additionally, she completed a statement when she filed her Request for Hearing in which she indicated that another herniated disc was found. She reported that her activities have been further limited by constant pain (Exhibit 6E). All told, the evidence in the record suggests that the claimant possesses a substantially reduced functional capacity as a result of her impairments.

On January 18, 2002, Dr. Stadlan completed a medical report in which he opined that the claimant was not able to sit more than ½ hour during an 8-hour workday; stand/walk more than ½ hour during an 8-hour workday; and lift and/or more than 10 pounds. The doctor noted that she had chronic pain and that she frequently needed rest periods during the day. He added that the claimant would probably miss work frequently due to exacerbations of pain (Exhibit 10F).

On May 19, 2002, Dr. Mahay, another treating physician, completed a residual functional capacity RFC questionnaire in which he opined that during an 8-hour workday, the claimant was not able to sit more than ½ hour and stand/walk more than ½ hour. He stated that she had to lie down/recline 7 hours during an 8-hour workday and that she frequently needed rest periods

during the day. He also opined that, due to exacerbations of pain, the claimant would probably miss work frequently. Finally, Dr. Mahay opined that as a result of her condition, she would probably be an unreliable worker (Exhibit 10F).

The undersigned notes that the non-examining consultant with the Disability Determination Service concluded that the claimant is capable of performing a limited range of light work activity (Exhibit 22). As the DDS medical opinions are from expert physicians and psychologists, they cannot be ignored (SSR 96-5p). However, as those of non-examining medical sources, their opinions are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, degree of specialization, and clarity of explanations for their opinions, which can be given weight only insofar as they are supported by the whole record, including new evidence received after their opinions were rendered.

In this case, those opinions were based on information contained in the record at the time of the state agency reconsideration determination and no medical records generated or provided after that date were considered by the state examiners. However, additional medical evidence received in the course of developing the claimant's case for review at the hearing, as well as evidence in the form of credible testimony at the hearing, which is consistent with medical evidence in the record, justifies a conclusion that the claimant's impairments are more limiting than was concluded by the state examiners (Social Security Ruling 96-6p). Therefore, the undersigned is unable to give the DDS opinion great weight.

The fourth step in the sequential evaluation requires a finding as to whether the claimant is capable of performing any "past relevant work." The record discloses that the claimant's past relevant work experience has been as an accountant. In this case, the claimant cannot perform any past relevant work, since even the claimant's least demanding past relevant work job required her to perform work activities inconsistent with the residual functional capacity determined above.

Once a claimant has established that she cannot resume her prior work because of her impairments, the burden is then on the Administration to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medically determinable impairments and symptoms, functional limitations, age, education, work experience, and skills.

In accordance with the burden that shifts to the Commissioner at the fifth step of the sequential evaluation process, the undersigned must analyze the impact of the claimant's vocational factors upon her ability to perform other jobs. Born June 20, 1952, the claimant was 46 years old on September 2, 1998. For the purpose of this decision, she is considered to be a younger individual age 45-49. She has at least a high school education and has a skilled work background. There are no transferable skills. The claimant cannot perform the full range of work defined as sedentary, due to pain.

Given the claimant's residual functional capacity and the vocational factors as described above, and considering Social Security Rulings 96-8p and 96-9p, a finding of disabled is appropriate.

In accordance with a finding that the claimant has been under a disability beginning September 2, 1998, she is entitled to Disability Insurance Benefits on the basis of her application of August 23, 2000.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1. The claimant has not engaged in substantial gainful activity since September 2, 1998.

2. The medical evidence establishes that the claimant has the following severe impairment: disorders of the back (discogenic and degenerative).

3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's assertions concerning her ability to work are credible.

5. The claimant is unable to engage in sustained work activity due to pain.

6. The claimant is unable to perform the requirements of her past relevant work.

7. The claimant is limited to less than sedentary work.

8. On September 2, 1998, the claimant was a younger individual age 45-49.

9. The claimant has at least a high school education.

10. The claimant has a skilled work background. There are no transferable skills.

11. The claimant's limitations significantly erode the occupational base of sedentary jobs, to the extent that there is not a significant number of jobs remaining in the economy which the claimant can perform. This finding is based upon Social Security Rulings 96-8p and 96-9p.

12. The claimant has been under a disability, as defined in the Social Security Act, since September 2, 1998 (20 CFR §404.1520(f)).

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on August 23, 2000, the claimant is entitled to a period of disability commencing September 2, 1998, and to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social Security Act.

_____
ALAN L. JONAS
Administrative Law Judge

JUN 21 2002
Date