IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA THOMPSON,<br><br>      Plaintiff,<br><br>v.<br><br>LONG TERM DISABILITY PLAN FOR EMPLOYEES OF MOLEX, INC., CIGNA GROUP INSURANCE and LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>      Defendants. | Case No.: 08 C 439<br><br>Judge Castillo<br><br>Magistrate Judge Brown |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Defendants, LONG TERM DISABILITY PLAN FOR EMPLOYEES OF MOLEX INCORPORATED ("Plan") and LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), by their attorneys, Daniel K. Ryan and Peter E. Pederson, state as follows for their Answer and Affirmative Defenses to Plaintiff's Complaint:

*Jurisdiction and Venue*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of an employer-sponsored benefit plan which became insured under a group long term disability insurance policy ("Plan") underwritten by Life Insurance Company of America ("LINA") and insured by CIGNA Group Insurance ("CIGNA") under Group Policy No. LK0005801 for the benefit of employees of Molex Inc. ("Molex"). In addition, this action may be brought before this court pursuant to 28 U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

**ANSWER:** Admit that Molex Incorporated ("Molex") established the Plan pursuant to ERISA to provide eligible employees of Molex and related entities with long-term disability ("LTD") benefits. Admit that the Plan is an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1). Admit that LINA issued Group Policy No. LK-005801 to Molex, and that the Group Policy insures certain LTD benefits payable under the Plan. Admit that the Court has jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Deny that a legal entity known as "CIGNA Group Insurance" exists or that such an entity issued the Group Policy. Deny all remaining allegations in ¶ 1.

2. The ERISA statute provides at 29 U.S.C. §1133 a mechanism for internal appeal of benefit denials. Plaintiff has exhausted all of her pre-suit appeals, thus this matter is ripe for judicial review.

**ANSWER:** Admitted.

3. Venue is proper in the Northern District of Illinois. 29 U.S.C. §1132(e)(2), 28 U.S.C.§1391.

**ANSWER:** Admitted on information and belief.

*Nature of the Action*

4. This is a claim seeking payment of disability income benefit payments pursuant to a policy of group insurance insured by CIGNA and underwritten by LINA to provide Long Term Disability Insurance Benefits (a true and correct copy of which is attached hereto and by that reference incorporated herein as Exhibit "A") to employees of Molex under Policy No. LK0005801. This action, seeking recovery of benefits, is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

**ANSWER:** Admit that plaintiff seeks to recover, under § 1132(a)(1)(B) of ERISA, LTD benefits that she contends are due under the terms of the Plan and the terms of the Group

Policy. Admit that the Plan was established to provide eligible employees with LTD benefits. Admit that LINA issued the Group Policy. Deny all remaining allegations in ¶ 4.

5. Policy No. LK0005801 does not defer to the discretion of CIGNA or LINA in the review of the claim, and therefore this action is subject to a de novo standard of review by this court.

**ANSWER:** Denied.

*The Parties*

6. Theresa Thompson ("Thompson") (DOB 6/20/1952) is and was a resident of Chicago, Illinois at all times relevant hereto.

**ANSWER:** Admitted on information and belief.

7. As a benefit of her employment, Molex provided its employees, including Thompson, with long-term disability insurance benefits. At all times relevant hereto, Molex, has been authorized to and does business in the Northern District of Illinois.

**ANSWER:** Admit that Molex established the Plan to provide eligible employees with LTD benefits and that Thompson was a participant in the Plan. Admit that Molex does business and is authorized to do business in the Northern District of Illinois. Deny the remaining allegations in ¶ 7.

8. CIGNA is an insurance company providing long-term disability coverage to the employees of Molex under Policy Number LK0005801.

**ANSWER:** Denied.

9. LINA is an insurance company that underwrites Policy Number LK0005801.

**ANSWER:** Admit that LINA issued the Group Policy to Molex. Deny the remaining allegations in ¶ 8.

3

10. The policy LK0005801 was rewritten January 1, 2000 and was a continuation of the same numbered policy that became effective as of July 1, 1978. The policy anniversary date is January 1.

**ANSWER:** Admitted.

11. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to her employment, Thompson received coverage under the Plan as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Plan.

**ANSWER:** Admit that the Plan is an employee welfare benefit plan as defined by 29 U.S.C. §1002(1). Admit that plaintiff was a participant in that plan as defined by 29 U.S.C. §1002(7) and that this claim relates to the Plan. Deny the remaining allegations contained in ¶ 11.

*Statement of Facts*

12. Thompson was actively employed full-time by Molex as a Credit Analyst until February 5, 1997, when she had to cease working due to severe neck and back pain resulting from multi-level disc disease and ensuing surgeries. Thompson has not engaged in disqualifying substantial gainful activity since February 5, 1997.

**ANSWER:** Admit that, prior to February 5, 1997, plaintiff was employed full time by a Molex subsidiary, Molex Fiber Optics, Inc., as an accounting coordinator. Admit that, at various times after February 5, 1997, plaintiff contended that neck and back pain prevented her from working. Deny all remaining allegations in ¶ 12.

13. Subsequent to ceasing employment, Thompson made a claim for long term disability benefits under the Plan, stating that due to her condition, on or about February 5, 1997,

and continuing to the present without interruption, she met the Plan definition of "disability," which states in relevant parts:

> "The employee is considered disabled if, solely because of Injury or Sickness, he or she is either:
> 1.   unable to perform all the material duties of his or her Regular occupation or a Qualified Alternative; or
> 2.   unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
> 1.   unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience; or
> 2.   unable to earn 80% or more of his or her Indexed Covered Earnings."

(Exhibit "A" at 12).

**ANSWER:**   Admit that plaintiff applied to LINA for LTD benefits under the Plan and contended that she met the Group Policy's definition of disability. Deny that ¶ 13 accurately quotes the Group Policy's definition of disability. Deny all remaining allegations in ¶ 13.

14.   Thompson supported her claim for benefits with numerous medical records and reports, demonstrating that she disability arising from impairments of her neck and back. Thompson submitted other evidence including her treating physician opinion certifying disability, and her long term disability was approved on June 9, 1997. She received long term disability benefits after satisfying the Plan's 90-day elimination period (February 5, 1997, until May 6, 1997).

**ANSWER:**   Admit that, on behalf of the Plan, LINA approved plaintiff's claim for LTD benefits effective on May 6, 1997. Admit that plaintiff and her physicians submitted records regarding medical conditions related to her neck and back. Deny the remaining allegations in ¶ 14.

15. Following approval of long term disability benefits, Thompson's medical condition did not improve, and she required four (4) additional spinal surgeries, on September 15, 1997 (lumbar hemilaminectomy), October 1998 (anterior cervical diskectomy and fusion at C4-5 and C5 corpectomy), and February 13, 2002 (L4-5 laminectomy and diskectomy with Brantigan cages, local bone, and AGF, L4-5 pedicle screw fixation, and L3-S1 posterior fusion). Another spinal surgery was performed post-termination in January 2007.

**ANSWER:** Admit that plaintiff underwent a laminectomy on September 15, 1997; an anterior cervical decompression in October 1998; and a laminectomy and diskectomy, with pedicle screw fixation and posterior fusion, in February 2002. Lack information and knowledge sufficient to form a belief as to the truth of the allegations in the last sentence of ¶ 15. Deny the remaining allegations in ¶ 15.

16. Despite the surgeries, post surgical MRI evaluations continued to show abnormalities and Thompson continued to experience neck pain, mid back pain, and low back pain.

**ANSWER:** Admit that plaintiff continued to complain of pain after the surgeries. Admit that post-surgical MRIs showed mild abnormalities. Deny that, at the time LTD benefits were terminated, plaintiff was disabled from all work or met the Plan's definition of disability. Deny all remaining allegations in ¶ 16.

17. On May 6, 2000, CIGNA acknowledged the severity of her condition when it certified that Thompson was disabled from both her own job and any other job.

**ANSWER:** Admit that, on May 6, 2000, LINA elected to pay plaintiff LTD benefits under the definition of disability based on any occupation until it could arrange for plaintiff to

undergo a functional capacity evaluation to determine whether plaintiff was disabled from any occupation for which she was qualified. Deny the remaining allegations in ¶ 17.

18. Thompson's claim was further supported by a determination of disability (signifying the inability to engaging in "any substantial gainful activity" (42 U.S.C. §423(d)(1)(A) – definition of "disabled" under the Social Security Act)) from the Social Security Administration which found she was disabled as of September 2, 1998 because she is "unable to engage in work activity due to pain … unable to perform the requirements of her past relevant work … [and] is limited to less than sedentary work" (a true and correct copy of which is attached hereto and incorporated herein as Exhibit "B", Findings p. 6).

**ANSWER:** Admit that, on June 21, 2002, an administrative law judge ("ALJ") for the Social Security Administration ("SSA") overturned the SSA's two prior findings that plaintiff was not disabled within the meaning of the Social Security Act. Admit that ¶ 18 purports to quote language in the ALJ's opinion. Deny the remaining allegations in ¶ 18, including any allegation that the SSA's disability determinations are binding on LINA or the Plan.

19. CIGNA referred Thompson to an attorney to assist with her Social Security Disability claim, paid costs associated with that representation, and was notified of the favorable disability determination.

**ANSWER:** Admit that LINA referred Thompson to counsel for assistance with pursuing her Social Security claim, that LINA paid certain costs incurred by counsel, and that LINA was notified of the ALJ's opinion. Deny all remaining allegations in ¶ 19.

20. In a letter dated June 9, 2005, CIGNA terminated Thompson's benefits effective June 6, 2005, even though there had been no improvement in Thompson's condition, for which she required and underwent a total of 10 serious spinal surgeries (at the time her claim was

terminated) at levels in her cervical, thoracic, and lumbar spinal surgeries with documented residual severe pain; additional spinal surgeries had been performed subsequent to her initial qualification for long term disability; and additional spinal surgeries were anticipated and in fact performed subsequent to termination.

**ANSWER:** Admit that, on June 9, 2005, LINA terminated plaintiff's LTD benefits under the Plan based on evidence that she no longer met the Plan's definition of disability. Deny the remaining allegations in ¶ 20.

21. The Plan states in relevant part,

### "TERMINATION OF DISABILITY BENEFITS

Benefits will end on the earliest of the following dates:
1. the date you earn 80% or more of your Indexed Covered Earnings;
2. the date we determine you are not Disabled;
3. the end of the Maximum Benefit Period;
4. the date you die;
5. the date you refuse, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan;
6. the date you refuse, without Good Cause, to fully cooperate in a Transitional Work Arrangement;
7. the date you are no longer receiving Appropriate Care;
8. the date you fail to cooperate with us in the administration of the claim. Such cooperation includes, but it not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due."

(Exhibit A, p. 8, emphasis in original).

**ANSWER:** Admit that ¶ 21 purports to quote the Termination of Disability Benefits provision in the Group Policy. Deny the remaining allegations in ¶ 21.

22. After CIGNA refused to pay continuing benefits, Thompson submitted a timely claims appeal to CIGNA which included medical evidence supporting her ongoing disability.

8

**ANSWER:**   Admit that Thompson submitted an appeal to LINA of the termination of her LTD benefits.  Deny the remaining allegations in ¶ 22.

23.   However, despite the foregoing events as outlined in paragraphs 12-22, CIGNA refused to alter its decision to deny payment of benefit in decisions dated January 5, 2006 and the final determination denying continuation of benefits on September 21, 2006.

**ANSWER:**   Admit that LINA, on behalf of the Plan, denied plaintiffs' administrative appeals on January 5, 2006 and September 21, 2006.  Deny all remaining allegations in ¶ 23.

24.   Because all internal claims appeals through CIGNA have been exhausted, this matter is now ripe for judicial review.

**ANSWER:**   Admit that plaintiff exhausted administrative remedies under the Plan and that this claim is not barred by the exhaustion doctrine.  Deny the remaining allegations in ¶ 24.

25.   The determination by CIGNA is contrary to the terms of the welfare benefit plan and has no rational support in the evidence. That decision is also contrary to conclusions reached by an independent, objective U.S. governmental agency as well as the reports of the treating and examining physicians.

**ANSWER:**   Denied.

26.   As a direct and proximate result thereof, based on the evidence submitted to CIGNA establishing that Thompson has met the Plan's disability definition, and that she continues to meet the definition of Total Disability, Thompson is entitled to all benefits due since June 6, 2005, and such benefits must be continued until she recovers from disability, dies or reaches the age of 65, whichever comes first.

**ANSWER:**   Denied.

6290422v1 885589

**AFFIRMATIVE DEFENSES**

1. To the extent plaintiff asserts common law or state law remedies, the claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U. S. C. § 1144.

2. Plaintiff's claims are barred for failure to comply with terms and conditions of the subject employee benefits plan.

3. In the event that this Court were to determine that plaintiff is entitled to long term disability benefits under the plan documents, plaintiff's claims are subject to the doctrines of setoff and recoupment in that she is receiving or has received other benefits which qualify as Other Income Benefits under the Plan and reduce the amount of any LTD benefit payable to her under the Plan.

4. Plaintiff's claims are barred, in whole or in part, on the ground that defendants discharged their obligations to plaintiff.

5. Plaintiff's claims against LINA are barred because it is not a proper defendant to a claim under 29 U.S.C. § 1132(a)(1)(B).

WHEREFORE, Defendants, LONG TERM DISABILITY PLAN FOR EMPLOYEES OF MOLEX, INC. and LIFE INSURANCE COMPANY OF NORTH AMERICA, respectfully request that this Court deny the relief sought in plaintiff's complaint, enter judgment in their favor for attorneys' fees and costs, and grant such further relief as the Court deems appropriate and just.

        Respectfully submitted,

        LONG TERM DISABILITY PLAN FOR EMPLOYEES OF MOLEX, INC., and LIFE INSURANCE COMPANY OF NORTH AMERICA

Daniel K. Ryan         By: s/ Peter E. Pederson
Peter E. Pederson
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
(312) 704-3000
(312) 704-3001 (fax)

6290422v1 885589

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on March 11, 2008, I e-filed this document using the Court's CM/ECF filing system, which will make a copy available to counsel of record identified below.

s/ Peter E. Pederson

## SERVICE LIST

David A. Bryant, Esq.
Daley, DeBofsky & Bryant
55 W. Monroe Street
Suite 2440
Chicago, Illinois 60603
(312) 372-5200
(312) 372-2778 (fax)

6290422v1 885589